## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA OWEN<br>          **Plaintiff,**<br><br>**v.**<br><br>**GEORGIA PACIFIC**<br>         **Defendant.** | **CIVIL ACTION NO.**<br>**3:03 CV 378 (DJS)**<br><br><br>**February 23, 2004** |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.    BACKGROUND**

The plaintiff complained to Human Resources about her manager's (Wayne Grant) inconsistent and negative treatment of her on several occasions commencing in late 2000. Complaint at Para. 18; Owen dep. 199. Mr. Grant testified that he had been informed by Human Resources that the plaintiff had complained about him. Grant dep. at 57.

Mr. Grant testified that he was not familiar with the Georgia-Pacific termination policy and that he didn't use it in recommending the plaintiff's termination to his boss. Grant dep. at 16.

Mr. Grant testified that he completed plaintiff's 2002 evaluation after he had recommended that she be fired to his new boss. Grant dep. at 17. Such recommendation was made even though Grant had noted that her performance had improved since her last rating of 2.9. Defendant's brief, Owen dep exh. 22. Such recommendation was made even though the

plaintiff's job performance for 2003 had been above average. Complaint, paras. 6 to 11.

Mr. Grant had tried to fire the plaintiff on two earlier occasions even though her ratings were 2.9. on both occasions. Grant dep. 22.   Such recommendation was made although his rating for her had resulted in a $21,000 bonus. Grant dep. 41.

Mr. Grant agreed that capacity was tight on plaintiff's lines and that profitability was an important consideration regarding such tight capacity. Grant dep 51, 54.

He agreed that the sales department wanted volume sales while the marketing department wanted profitability on its sales and that there was tension between the two groups. Grant dep. 54-55.  He further agreed that conflicts and disagreements resulted between the two departments as a result of such tension. Grant dep. 55.   Furthermore, he testified that the sales department was aggravated at times because they frequently wanted lower prices from the plaintiff than she was willing to give them because she was stressing profitability. Grant dep. 55-57.

Although Mr. Grant recommended the termination of the plaintiff on three separate occasions, he was not familiar with and did not use the defendant's termination policy, Civil Treatment for Managers manual  or the TPM manual at any time. Grant dep. 59, 63, 73.

- 2 -

Although Mr. Grant criticized the plaintiff for being "aggressive", he praised her for being "assertive".  Grant dep. 64.

Although Mr. Grant rounded the plaintiff's final 2.6 evaluation down to a 2.0 rating, he inconsistently did not round her prior two 2.9 evaluations up to a 3.0 rating.  Defendant's brief, Owen dep., exhs. 10, 15, 20, 22.

He agreed that his evaluation of the plaintiff was subjective. Grant dep. 96.

He agreed that her increasing "variable contribution" by 5% was "good news". Grant dep. 95.   He agreed that she was "on track" for the first quarter of 2002. Grant dep. 105.  He agreed that her 111% to plan for the first quarter of 2002 was beating the plan which is "good".  He even wrote to his superior, Mike Dunn, on March 30, 2002 to say that base plastics (plaintiff's product area) is beating the plan and beating the prior year's numbers and that volume continues to be strong. Grant dep. 112.  Lastly, he stated that the plaintiff's incremental margin results were 4% ahead of plan year to date and 10% over plan.  Grant dep. 114.

The plaintiff  asserted during her deposition that her job performance was hurt because four products were not production ready so that there was insufficient capacity, insufficient quality and insufficient supply.  Owen dep. 80.

She contended that Mr. Grant failed to follow the TPM requirements and failed to provide her with the "key drivers".  Owen dep. 141, 204,   She

asserted that the TPM was being used widely.   Owen dep. 144.  She asserted that Laurie Richman of defendant's Human Resources department had told her in July of 2001 that she can't make the managers follow the TPM requirements.

The plaintiff testified that Mr. Grant failed to spend adequate time with her and that he treated her very differently;  for example, other employees could easily meet with him whereas she had to make appointments and he repeatedly cancelled such appointments. Owen dep. 153-154.

The plaintiff asserted that Mr. Grant failed to follow the TPM in many ways by the way he treated her.   Owen dep. 158-161, 169, 180.

The plaintiff asserted that the sales department griped at her because she wouldn't give them low prices because she was instructed by Grant to raise profits.  Owen, 181. Plaintiff also stated that she received very abusive email from sales employees due to her not giving low price authorizations. Owen dep 242.  She stated that pursuing Division goals doesn't always make people happy.

The plaintiff stated that Mr. Grant asked her several times as to why she wanted to work for him. Owen dep. 211.


II.     ARGUMENTS

- 4 -

A.    SUMMARY JUDGMENT STANDARD

With regard to motions for summary judgment, the Second Circuit in <u>Gallo</u>

<u>v. Prudential Residential Services. Ltd. Partnership,</u> 22 F.3d 1219 (2d Cir.

1994) stated:

> "[1] [2] [3] [4] Considering how often we must reverse a grant of
> summary judgment, the rules for when this provisional remedy may be
> used apparently need to be repeated. First, summary judgment may not
> be granted unless "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that
> the moving party is entitled to a judgment as a matter of law."
> Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to
> demonstrate that no genuine issue respecting any material by
> reference to the substantive law can it be determined whether a
> disputed fact is material to the resolution of the dispute. See <u>Dister,</u> 859
> F2d at 1114."

Summary judgment is appropriately granted when the evidentiary

record shows that there are no genuine issues of material fact and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In

determining

whether the record presents genuine issues for trial, the court must view all

inferences and ambiguities in a light most favorable to the non moving party.

See <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), cert. denied, ____ U.S. ____,

112 S. Ct.

When the issue in a case is an employer's intent, summary judgment should be used sparingly. <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2nd Cir.), cert denied, 474 U.S. 829 (1985).

The burden is on the moving party "to demonstrate the absence of any material factual issue generally in dispute." <u>American Int'l Group, Inc. v. London</u> <u>American Int'l Corp.</u>, 664 F.2d 348, 351 (2d Cir. 1981); <u>Monnig.v. Kennecott</u> Corp., 603 F.Supp. 1035 (D.Conn. 1965).

In determining whether or not there is a genuine factual issue, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party." <u>Schwabenbauer v. Board of Education</u>, 667 F.2d 305, 313 (2d Cir. 1981); <u>Monnig</u>, supra; <u>Burns v. Preston Trucking Co.</u>, Inc., 621 F.Supp. 366 at 367 (D.Conn. 1985).

A complaint should not be dismissed as a matter of law "unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief." <u>Williams v. Vincent</u>, 508 F.2d 541 (2d Cir. 1974).   At the summary judgment stage, a "(j)udge's function is not himself to weight the evidence and determine the truth of the matter but determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"This procedural weapon is a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to a jury."

**Heyman v. Commerce and Industry Insurance Co.**, 524 F.2d 1317, 1320 (2d Cir. 1975).

In deciding whether there is a genuine issue of material fact, courts must draw all reasonable inferences in favor of the non-moving party. **Anderson v Liberty Lobby, Inc.**, 477 U.S. 242, 255 (1986).

 **B. ERISA DOES NOT PREEMPT PLAINTIFF'S ORAL CONTRACT**
**AND     PROMISSORY ESTOPPEL CLAIMS**

Plaintiff's oral contract and promissory estoppel claims are not preempted by ERISA because such claims are based on oral assurances of continued employment which is different from assurances of coverage under an ERISA plan.  Such state law claims have only a "tenuous, remote or peripheral" connection to the ERISA covered plans.  See, e.g., **New York Blue Cross v. Travelers Ins.**, 514 U.S. 645, 661 (1995); **District of Columbia v. Greater Washington Board of Trade**, 506 U.S. 125, 130 n. (1992); **Shaw v. Delta Air Lines**, 463 U.S. 85, 100 n. 21 (1983); **Mackey v. Lanier Collection Agency**, 486 U.S. 825, 830-838 n. 12 (1988); **Ingersoll-Rand Co. v. McClendon**, 498 U.S. 133, 139 (1990).

Since 1995, the Supreme Court has begun to narrow its view of the scope of preemption under Section 514 of ERISA.  In **New York State Conf. of Blue Cross and Blue Shield Plans v. Travelers Ins. Co**, 512 U.S. 645 (1995), the Supreme Court held that a state law dealing with hospitals collecting

- 7 -

surcharges from patients covered by third party providers was not preempted by ERISA.  For the first time, the Supreme Court stated that the ERISA "relate to" language was a limitation on the scope of preemption rather than a definition of the scope of preemption.

In 1997, the Supreme Court again denied preemption of a state law because it did not "relate to" an employee benefit plan. <u>DeBuono v. NYSA-ILA Medical and Clinical Serv. Fund</u>, 520 U.S. 806 (1997).

Justice Scalia and Justice Ginsburg, in a concurring opinion in <u>California Division of Labor Enforcement v. Dillingham Construction</u>, N.A. 519 U. S. 316 (1997), when the Supreme Court again denied preemption of a state law, observed that the majority's decision to deny preemption did not go far enough because it failed to overrule many of its earlier decisions and failed to state that the "relate to" clause had been erroneously interpreted for years.

Preemption of breach of contract and promissory estoppel claims was denied in <u>Pizlo v. Bethlehem Steel Corp.</u> 884 Fed. 2nd 116, (4th Cir., 1989) when the lower court decision dismissing such claims was overturned on appeal.  The court stated:  "ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." <u>29 U.S.C. §§ </u>1144(a) (1982).   The court then noted that the phrase 'relate to' has been read expansively, giving 'unparalleled breadth' to the preemption provision." <u>Salomon v. Transamerica Occidental Life Ins. Co.</u>, 801 F.2d 659, 661 (4th Cir.

1986). Nevertheless, the court then held that the claims of breach of contract and promissory estoppel are not preempted by ERISA because they do not "relate to" an employee benefit plan.

In Olson v. Pratt and Whitney (US. Dist. Lexis 18994, 1998), the court held that the mere fact that a plaintiff's complaint makes references to an employee benefit plan is not a sufficient basis for ERISA preemption. The court elaborated by stating that the defendant's severance agreement was only relevant to the issue of damages in this case. Such a connection, however, is "too attenuated to bring the claim within the preemptive provision of ERISA." Totton v. New York Life Ins. Co., 685 F. Supp. 27, 31 (D. Conn. 1988); see also Jaskilka v. Carpenter Tech. Corp., 757 F. Supp. 175, 178 (D. Conn. 1991); accord Pizlo v. Bethlehem Steel Corp., 884 F.2d 116, 120-21 (4th Cir. 1989).

In Amato v. Western Union International, Inc. 773 Fad 1402, (2nd Cir. 1985), the Second Circuit determined that plan participants were allowed to file an action - on a separate contract theory -against the purchaser of a company who had committed that the pension benefits would not be reduced after purchasing the company. Such cause of action was held to be permissible in order to enforce the purchaser's promise based on their rights as third-party beneficiaries or under promissory estoppel. See also, Holliday v. Xerox Corp 555 F. Supp 51, 4 E.B.C. 1221, (ED Mich. 1982)

C.    THE CIVIL TREATMENT FOR MANAGERS MANUAL
      CONSTITUTES AN IMPLIED EMPLOYMENT CONTRACT

The entirety of circumstances determines the existence and terms of an implied contract. See <u>Johnson v Carpenter Technology Corp</u>., 723 F. Supp. 180, 183 (D. Conn. 1989).

The intent of the parties becomes a question of law only when there is definitive contract language... [I]n cases involving implied employment contracts, the terms of which must be gleaned from ...the "totality of the employment relationship", such definitive contract language is obviously lacking, and the intent of the parties remains a question of fact to be determined by the jury. <u>Heller v. Champion  Corp</u>., 891 F.2d 432, 435 (2d Cir. 1989) (citations omitted).

In <u>Ohanian v. Avis Rent A Car</u> C.A. No. 85-7284, 1 IER Cases 1107 (2nd Cir. 1985), the Second Circuit recognized the existence of an employment contract (based on oral commitments only) on grounds fairly similar to the instant case. In that case, the plaintiff had been told that "...his future was secure in the company ... unless he, screwed up badly." (1 IER Cases, at 1103).          Connecticut recognizes liability in a contract for action which is induced by reliance on a promise even though there is an absence of common law consideration. D'Ulise-Cupo v. Board of Notre Dame High School, 202 Conn. 206, 213 (1987). In D'Ulise-Cupo, the court relied on the definition of

- 10 -

the doctrine of promissory estoppel set forth in the Restatement (Second)

Contracts at § 90. The Restatement requires:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of that promise." Id.

In <u>Fleming v. Sedgwick James of Connecticut. Inc.</u>, the court

denied a motion to strike the promissory estoppel count. 1995 WL 500545 *7

(Conn.Super., August 11, 1995). In that case, the plaintiff performed extra

work and in return was promised job security. The corporate officer told

plaintiff that "he wanted her on his team;" he told her that "if she would stay

with the Company and do all that she could to help him she would have `job

security and financial reward."' Id. at *3. The court reasoned that a worker is

given job security if a worker is told that he/she will not be terminated without

just cause. The court went on further to note that "in reliance on such a

representation the worker may turn down other job opportunities or has

reason to make life plans or assume added job duties or non job related

financial or personal obligations he or she would not otherwise have

assumed." Id.

In <u>Finley v. Aetna Life & Casualty Co.</u>, supra at p. 205, the Connecticut

Supreme Court has stated that a party may maintain a claim for damages

based upon a promise which induces the party's action or forbearance, "if

such action or forbearance is undertaken in reasonable reliance upon the promise." (Citing <u>Sheets v. Teddy's Frosted Food, Inc</u>., 179 Conn. 471, 475, 427 A.2d 385 (1980); <u>Hebrew University Assn. v. Nye</u>, 148 Conn. 223,

Because every employee works pursuant to some kind of contract, in order to determine the terms and conditions of such contract "the factual circumstances of the parties' relationship must be examined in light of the legal rules governing unilateral contracts." <u>Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 234 Conn. 1,13 (1995).

"In the absence of definitive contract language, . . . the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." <u>Finley v. Aetna Life & Casualty Corp</u>., 202 Conn. 190, 199 (1987), overruled on other grounds, <u>Curry v. Burns</u>, 225 Conn. 782 (1993) (internal quotation marks and citations omitted). Since the key inquiry is "an inference of fact, determining the intent of the parties is within the province of the jury." <u>Gaudio v. Griffin Health Services Corn.</u>, 249 Conn. 523, 533 (1999).

The Connecticut Supreme Court came to the same conclusion in <u>Coelho v. PosiSeal International. Inc</u>., 208 Conn. 106 (1988), when it refused to overrule a jury decision as to the existence of an implied employment contract. The jury concluded that the parties had an implied agreement that, as long as

the plaintiff performed his job properly, he would not be terminated. **According**

**to the Court:**

"Absent a statutory warranty or definitive contract language, the
determination of what the parties intended to encompass in their contractual
commitments is a question of the intention of the parties and an inference of
fact .... This process of inference is peculiarly a jury function, the raison d'etre
of the jury system.
Id. at 113. See also, <u>Christenson v. Bic Corp.</u>, 18 Conn. App. 451, 454 (1989).

Just as it was inappropriate for the <u>Coelho</u> court to grant the defendant's

motion to set aside the verdict, so similarly would it be inappropriate for the

Court in the present case to grant summary judgment on the contract issue.

        Connecticut law "requires the trier of fact ...to determine the precise

terms of an implied contract and whether any of those terms were breached."

Id. "[T]he courts generally do not take this issue away from the trier of fact if

there is a dispute as to the existence and terms of an implied employment

contract." <u>Manning v. Cigna Corp.</u>, 807 F.Supp. 889, 895 (D. Conn. 1991); see

also <u>Christensen v. Bic Corp.</u>, 18 Conn.App. 451, 454 (1989) ("Absent specific

contract language, whether there was a contract, and the terms of that

contract, are questions of fact."). Therefore, the existence of an implied

contract is a genuine issue of material fact.

        Per paragraphs 12 through 16 of plaintiff's Complaint in this case,

plaintiff claimed that defendant's management  made oral commitments of job

security to her which she relied upon to her detriment.  Since defendant has

- 13 -

agreed that such oral commitments were made (please see defendant's Undisputed Facts, paragraphs 55 to 57), there are certainly questions of fact as to whether such commitments of job security that were made to the plaintiff constituted implied employment contracts.

Contrary to defendant's assertion, the Civil Treatment for Managers document does contain contractual commitments of job security assurance. Paragraphs 26 through 31 spelled out the numerous commitments which defendant undertook to provide its employees...which Wayne Grant breached with regard to his treatment of the plaintiff.

Per para. 23 of plaintiff's Complaint, she stated that she was instructed at a Company meeting to follow the Civil Treatment for Managers resource manual and to use it to supervise and discipline subordinates.   Just because the manual was not distributed to all employees does not change the fact that defendant distributed it to many of its employees - including the plaintiff  - and committed to following such procedures.

Just because the plaintiff described the Civil Treatment for Managers resource manual as containing guidelines during her deposition does not change the fact that she alleged multiple assurances of job security and fair treatment of employees in her Court Complaint and made no references to guidelines in such Complaint.

- 14 -

Contrary to defendant's assertion, the Civil Treatment for Managers resource manual does not contain a contract disclaimer.   Defendant's asserted language does not constitute a disclaimer under Connecticut law.  It does not state that such document does not constitute a contract nor does it state that all employees are "employees at will".

Although defendant also asserts that the Civil Treatment for Managers resource manual is not Georgia-Pacific's personnel manual, plaintiff asserts that such document is Georgia-Pacific's personnel manual (as alleged in para. 23 of plaintiff's Complaint) since it has Georgia-Pacific's name on the cover and it was provided to plaintiff at a meeting called by Georgia-Pacific.   Just because the document was written by an outside company does not change the fact that defendant adopted such document for use in its company.

Plaintiff relied upon defendant's assurance of severance pay by not leaving her employment with defendant, even in the face of the defendant moving its operation many hundreds of miles away to Georgia.

### D.    THE TOTAL PERFORMANCE MANAGEMENT TOOL  (TPM) CONSTITUTES AN IMPLIED EMPLOYMENT CONTRACT

Plaintiff's cited authority and arguments in section C above is incorporated by reference into this contractual breach section as well.

The  TPM does provide assurances of job security contrary to defendant's assertion.  On page 10 (defendant's brief: Owen deposition, exhibit 10) of the TPM, it provides a detailed explanation of the five different job ratings that an employee can receive.  It also provides extensive details on how managers are supposed to be coaching their subordinates throughout the year so that there is a shared commitment and shared responsibility for job success between the employee and his/her manager.  The bottom category of job ratings is labeled as "unsatisfactory".  The description for "unsatisfactory" is as follows:

"This level is reflective of poor performance, where few results are achieved and major deficiencies exist in the performance of job accountabilities. Performance negatively impacts the business and its ability to reach objectives.  Performance of position duties requires constant monitoring and guidance.  At the first step in the progressive discipline process, a specific improvement plan should be initiated if it has not already begun.   Discharge may result."

Plaintiff relied on such assurances of progressive discipline.  However, although she had received a $21,000 bonus only two months earlier and a recent 4% salary increase and was 123% ahead of her goals for 2002, she was fired without any progressive discipline and without any improvement plan.  In fact, her boss had recommended that she be fired before he had even evaluated her as a Level 2 performer, one level above Unsatisfactory!  As stated above, her manager failed to follow the assurances provided by the TPM.

- 16 -

Contrary to defendant's assertion, the TPM was not limited to just the job evaluation form for 2002.   Per the TPM exhibit itself, page 1 of such document states that the "Key to the success of TPM is progress reviews - open and frequent dialogues between the employee and reviewer on performance results held throughout the year."   Furthermore, plaintiff alleged violations of the TPM in paragraphs 32 through 46 of her court Complaint.

### E.    A BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING DID OCCUR BECAUSE IMPLIED EMPLOYMENT CONTRACTS DID EXIST AND BECAUSE GEORGIA-PACIFIC DID                ACT IN BAD FAITH

Since plaintiff has shown in sections C and D above that there were contractual commitments made by defendant, defendant's argument that the good faith and fair dealing claims fail lacks any merit.

Georgia-Pacific acted in bad faith through its agent, Wayne Grant, because of his retaliatory actions to discharge her after she complained about him to Human Resources.   Mr. Grant's repeated efforts to have her fired, notwithstanding her good job performance as shown by her accomplishing her goals, and his ongoing refusal to follow defendant's progressive discipline policy show that he was clearly engaging in bad faith towards the plaintiff.

### F.    PLAINTIFF'S NEGLIGENCE CLAIM SHOULD NOT BE DISMISSED

In <u>Emerick v. Kuhn</u>, 1996 WL 278355 (Conn. Super.), the plaintiff claimed that the defendant corporation had breached a duty owed to the plaintiff on the basis of its Code of Ethics. The court stated:

"Perhaps UTC did owe a duty, in the absence of a contract, to the plaintiff. That issue is unresolvable until the jury decides the question of fact as to whether or not a contract existed. If a contract existed, then this count may be duplicative of the breach of contract counts. If the jury finds that a contract did not exist, then the issue of whether or not UTC owed the plaintiff a duty outside the scope of an employment contract, depending on the evidence at trial, might be addressed by the jury. Accordingly, defendant UTC's Motion for Summary Judgment on this negligence count is denied."

In <u>Chamberlain v. Bissell, Inc</u>., 547 F. Supp. 1067 (W.D. Mich. 1982), the court found that the employee had stated a claim for negligent performance evaluation. The court concluded that the personnel manual was intended to benefit its employees and that, accordingly, the employer had a duty to use ordinary and reasonable care in performing its annual evaluations. Lastly, the court found that the defendant's Vice President of Manufacturing had breached that duty by failing to warn the manager, at the time of the performance review, that he might be terminated if his job performance did not rapidly and dramatically improve.

Since defendant's two manuals both provided for progressive discipline and an integrated approach to supervision of employees, defendant's egregious failure to follow its own policies should be presented to the jury for its determination of whether there was negligence or not.

## G.    DEFENDANT'S DECLARATIONS SHOULD NOT BE CONSIDERED SINCE THEY ARE NOT AFFIDAVITS

Per FRCP rule 56 (b), affidavits are required to support defendant's Motion for Summary Judgment.  Since defendant has submitted Declarations rather than Affidavits, the Declarations should not be considered by the Court in ruling on defendant's Motion.

Declarations are inadequate proof since the signatures on such documents are not notarized.

## III.   CONCLUSION

In conclusion, for the foregoing reasons, plaintiff respectfully requests that defendant's Motion for Summary Judgment be denied.

THE PLAINTIFF:
DONNA OWEN

By: _____

Stephen P. Horner, Esquire
2183 Boston Post Road
Darien, Connecticut 06820
Federal Bar Number: ct

02460

(203) 655-7905

## CERTIFICATE OF SERVICE

**I hereby certify that a true copy of the forgoing was sent via first class mail, postage prepaid on February 23, 2004  to:**

       **Richard D. Haygood, Esq.**
       **Kilpatrick Stockton LLP**
       **3737 Glenwood Avenue, Suite 400**
       **Raleigh, North Carolina 27512**

                          _____

                          **Stephen P. Horner**