IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA OWEN, | ) |
| Plaintiff, | ) CIVIL ACTION NO. |
| | ) 3:03 CV 378 (DJS) |
| vs. | ) |
| GEORGIA-PACIFIC CORPORATION, | ) |
| Defendant. | ) March 8, 2004 |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Instead of responding to the record evidence and well-settled legal principles outlined in Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("SJ Memo"), Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition") merely strings together allegations unsupported by the record and case citations that are inapposite to the issues at bar. Many of the points Defendant raised in its SJ Memo remain completely unchallenged. On the issues Plaintiff does address she fails to create any genuine issue of material fact warranting a trial, and Defendants are entitled to judgment as a matter of law.

**I. Plaintiff's Opposition To Defendant's Motion For Summary Judgment Fails To Create A Genuine Issue Of Material Fact.**

Plaintiff's Opposition fails to "set forth **specific facts** showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 252 (1986) ("[The] mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original). Plaintiff has admitted the vast majority of material facts contained in Defendant's Local Rule 56(a)1 Statement. See Plaintiff's Local Rule 9(c)2 Statement (hereinafter referred to as "56(a)2 Statement"). Where Plaintiff has not admitted a material fact, her denials rely upon allegations in her Complaint or her lack of knowledge. See id. Neither Plaintiff's allegations in her Complaint nor her lack of knowledge of the facts

asserted creates a genuine issue of material fact. Fed. R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading."); Egri v. Connecticut Yankee Atomic Power Co., 270 F. Supp. 2d 285, 291 (D. Conn. 2002) (stating that "denials and assertions of lack of knowledge" fail to create genuine issues of material fact). While Plaintiff has attempted to offer explanations for her unacceptable behavior outlined in Section II.G of Defendant's SJ Memo, her explanations fail to raise a material issue warranting a trial.

For example, Plaintiff's Opposition focuses on certain aspects of Plaintiff's performance which she viewed as positive, notably her receipt of a $21,000 bonus and the sales volume and margin numbers for her product line. Opposition at 2-3. However, Plaintiff's receipt of the $21,000 bonus was based primarily on the success of the North American Consumer Products and Dixie businesses as a whole, and not on Ms. Owen's individual performance. See Second Declaration of Lori Richman, attached hereto as Exhibit A. The success of Plaintiff's product line is irrelevant to the reason she was terminated. Plaintiff cannot dispute that Mr. Dunn received an overwhelming number of complaints regarding Ms. Owen's inability to do her job, her abrasive style, her lack of communication skills, and her negative impact on key team members' ability to do their jobs. See Dunn Decl. ¶ 5, attached as Exhibit E to Defendant's 56(a)1 Statement; see also Section II.G of Defendant's SJ Memo. Plaintiff's Opposition further attempts to misdirect the Court's attention toward Mr. Grant, his recommendation that Ms. Owen be terminated, and the timing and format of her performance review for 2001. Opposition at 1-2. This evidence in no way contradicts Mr. Dunn's testimony that he, not Mr. Grant, made the decision to terminate Ms. Owen's employment based on the consistent and unsolicited feedback he received from numerous managers regarding Ms. Owen's poor performance. Dunn Decl. ¶¶ 5-6. Plaintiff's Opposition simply fails to create any genuine issue warranting a trial in this matter.

## II. Plaintiff's Breach Of Oral Contract And Promissory Estoppel Claims Are Based Solely On An ERISA Plan And Are Therefore Preempted.

Plaintiff's Opposition argues that her breach of oral contract and promissory estoppel claims do not "relate to" an employee benefit plan, and therefore should not be preempted by ERISA. Opposition at 7-9. To support her argument, Plaintiff relies on cases where the claims at issue were "not contingent on the existence of an employee benefit plan." Olsen v. Pratt & Whitney Aircraft, No. 3:93CV1885AHN, U.S. Dist. LEXIS 18994 at *9 (D. Conn. 1998) (plaintiff's common law fraud claim did not "call into question the operation or management of an employee benefit plan"); see also Pizlo v. Bethlehem Steel Corp., 884 F.2d 116, 120 (4th Cir. 1989) (plaintiffs' wrongful discharge claim did not "bring into question whether Plaintiffs [were] eligible for plan benefits"). The claims in these cases were not preempted because the employee benefit plans at issue were "only relevant to the issue of damages." Olsen, U.S. Dist. LEXIS 18994 at *10; see also Jaskilka v. Carpenter Tech. Corp., 757 F. Supp. 175, 178 (D. Conn. 1991) (employer's retirement plan was "irrelevant" to plaintiff's breach of contract claim based on allegations that defendant's seniority policy entitled her to a job transfer; the plan was "relevant only to the issue of damages"); Totton v. N.Y. Life Ins. Co., 685 F. Supp. 27, 30 (D. Conn. 1988) (employees' breach of contract claims based on written employment agreements were not preempted merely because the damages sought included the value of pension benefits).

The cases cited by Plaintiff addressed entirely different circumstances than those presented by the undisputed facts in the case at bar. Here, Ms. Owen has not merely asserted that the measure of her damages should include the value of certain benefits, nor has she plead a claim for continued employment that is not dependent on the existence of an employee benefit plan. Instead, Ms. Owen has admitted that her claimed rights to continued employment and severance benefits are based solely on the Georgia-Pacific Corporation – Fort James Transition Severance Pay Plan. See 56(a)2 Statement ¶ 59–61. Any oral representations made to Ms. Owen regarding continued employment or

severance benefits dealt "expressly and exclusively" with the Transition Severance Pay Plan. Smith v. Dunham-Bush, Inc., 959 F.2d 6, 10 (2d Cir. 1992) (finding plaintiff's breach of contract claim based on employer's oral representations regarding benefits plan preempted by ERISA). Plaintiff's claims are merely an attempt to circumvent the Transition Severance Pay Plan's eligibility requirements and obtain the continued employment and severance benefits provided pursuant to the Plan. The existence of the Transition Severance Pay Plan "is a critical factor" for Plaintiff's argument, and as such her claims relate "not merely to . . . benefits, but to the essence of the [Transition Severance Pay Plan] itself." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40, 111 S. Ct. 478, 483 (1990) (holding that plaintiff's wrongful discharge claim was preempted because it was "premised on" an ERISA-covered plan). ERISA provides the "exclusive federal cause of action for resolution" of Plaintiff's claims. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).[1] Based on the holdings in Ingersoll-Rand, Taylor, Smith, and the cases cited in Section III.B of Defendant's SJ Memo, Plaintiff's breach of oral contract and promissory estoppel claims are preempted by ERISA.

### III. Plaintiff's Claims That The Civil Treatment® for Managers Manual And The Total Performance Management Tool Constitute Implied Contracts Fail As A Matter of Law.

Plaintiff's Opposition asserts that "in the absence of definitive contractual language," whether the parties intended an employment manual to constitute a contract is a question of fact to be determined by the trier of fact. Finley v. Aetna Life & Casualty Corp., 202 Conn. 190, 199, 520 A.2d 208, 213–14 (1987), overruled on other grounds, Curry v. Burns, 225 Conn. 782, 733 A.2d 197, 205 (1993); see Opposition at 12. However, this Court has expressly stated that:

> Even after Finley, it is clear that the existence of a personnel manual claimed to create a contractual relationship does not automatically create a question of fact which precludes summary judgment. In this case, the threshold question is whether,

---

[1] Nothing in the Supreme Court cases cited on pages 7-8 of Plaintiff's Opposition in any way suggests that the Court has abandoned the proposition that § 502(a)(1)(B) of ERISA is the exclusive means by which participants may assert claims for plan benefits.

4

> interpreting all inferences in a light most favorable to plaintiff, the manuals issued by [the defendant-employer] could be found to give rise to an enforceable contract. On a motion for summary judgment, this is a question for the court.

Manning v. Cigna Corp., 807 F. Supp. 889, 893 (D. Conn. 1991) (quoting Owen v. Am. Nat'l Red Cross, 673 F. Supp. 1156, 1165 (D.Conn. 1987)). The case at bar thus presents a question of law for the court, and "judges in this district have not hesitated to grant summary judgment on such claims in the appropriate circumstances." See Manning, 807 F. Supp. at 893 (collecting cases).

Plaintiff also cites numerous cases addressing promissory estoppel in an attempt to support her implied contract claim. Opposition at 10–12. These cases generally concerned statements made in one-on-one negotiations which induced an employee to act. Opposition at 10–12.[2] Plaintiff's apparent effort to convert her implied contract theory into promissory estoppel is unavailing. Plaintiff has not and cannot point to any specific promises made during one-on-one negotiations regarding either the Civil Treatment® for Managers (CTM) Manual or the Total Performance Management (TPM) Tool.[3]

### A. Plaintiff's Claim Regarding The CTM Manual Fails As A Matter of Law.

Plaintiff's claim regarding the CTM Manual fails as a matter of law because the manual was only distributed to supervisors, was only a guideline, and contained a disclaimer. Plaintiff admits that the CTM Manual was only distributed to supervisors. Opposition at 14; 56(a)2 Statement ¶¶ 21–25. Without any support whatsoever, Plaintiff argues that this fact is irrelevant. Opposition at 14. Plaintiff's argument is contrary to established law. See Grich v. Textron Lycoming, 822 F. Supp. 66,

---

[2] See Ohanian v. Avis Rent A Car, 779 F.2d 101 (2d Cir. 1985) (promise made to employee in one-on-one negotiations to induce employee to move across the country and accept a new position); D'Ulisse-Cupo v. Bd. of Notre Dame High Sch., 202 Conn. 206, 520 A.2d 217 (1987) (finding no promissory estoppel based upon statements made to employee where employee's contract was not renewed); Coelho v. PosiSeal Int'l, Inc., 208 Conn. 106, 544 A.2d 170 (1988) (oral assurances given employee in one-on-one negotiations regarding employee's specific concerns).

[3] Plaintiff appears to rely on statements that were made to her concerning the Transition Severance Pay Plan as evidence of an implied contract based upon the CTM Manual and TPM Tool. Opposition at 13–14. Plaintiff has not and can not point to any evidence that these statements relate in any way to the CTM Manual or the TPM Tool at issue in this case. As discussed in Section II, supra, Plaintiff's promissory estoppel claim based on these statements is preempted by ERISA.

5

71 (D. Conn. 1993) (holding that as a matter of law, a manual cannot constitute an enforceable contract when it has been distributed only to supervisors); Owen v. Am. Nat'l Red Cross, 673 F. Supp. 1156, 1165 (D. Conn. 1987) ("The Supervisors' Manual cannot form the basis for an enforceable contract because it was not generally provided to employees or intended for circulation.").

Plaintiff has also admitted that the CTM Manual was a resource manual that only contained guidelines for supervisors. Opposition at 14; Owen Dep. at 123–25, 128, attached as Exhibit A to Defendant's 56(a)1 Statement. Plaintiff relies solely on the allegations in her Complaint in an effort to contradict her deposition. Opposition at 14.[4] Plaintiff cannot create a genuine issue of material fact by merely claiming that the CTM Manual is a contract when, as a matter of law, it is not. Christenson v. Bic Corp., 18 Conn. App. 451, 458, 733 A.2d 197, 205 (1989) (holding that bonus guidelines presented to supervisors were not enough to form a contract and that the mere fact that plaintiff believed the guidelines to be a contract was not enough to establish an implied contract); Grich, 822 F. Supp. at 71 ("[P]laintiff must prove that the alleged employment manual contains mandatory directives enforceable as contractual obligations and not mere guidelines for employees.") (citations omitted); Reynolds v. Chrysler First Commercial Corp., 40 Conn. App. 725, 730, 673 A.2d 573, 577 (1996) ("The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind the [defendant] without some evidence that it intended to be bound to such a contract.") (citations omitted).

Further, Plaintiff asserts that the CTM Manual "is Georgia-Pacific's personnel manual." Opposition at 15. This statement is contrary to Plaintiff's admission in her sworn deposition and

---

[4] Plaintiff cites to her Complaint throughout her Opposition. Plaintiff cannot rely upon allegations in her Complaint to create an issue of material fact, especially when her sworn deposition contradicts those statements. Fed. R. Civ. P. 56(e) (stating that in response to a motion for summary judgment, the non-moving party may not "rest upon the mere allegations or denials in the adverse party's pleadings"). Plaintiff's reliance on her Complaint merely underscores her lack of evidence.

Rule 56(a)2 Statement that Georgia-Pacific did not have a personnel manual. See Rule 56(a)2 Statement ¶ 31; Owen Dep. at 136–37. Thus, by Plaintiff's own admission, this assertion simply is not true.

Moreover, without any legal support, Plaintiff has asserted that the disclaimer in the CTM Manual is inadequate. Opposition at 15. As Plaintiff has admitted, the CTM Manual was never a personnel manual. See Rule 56(a)2 Statement ¶ 31; Owen Dep. at 136–37. Rather, it was merely the written materials used during a training program for supervisors. See 56(a)2 Statement ¶¶ 19-21. Thus, while the CTM Manual disclaimer does not contain "at-will" language, such a training manual clearly would not ordinarily contain such language. The CTM Manual nonetheless contains a statement clearly disclaiming Georgia-Pacific's intent to contract with its recipients. Owen Dep. Ex. 9 at unnumbered title page; see Finley, 202 Conn. at 199, 520 A.2d at 214 (stating disclaimer will protect employer from contract claims if it disclaims the intention to contract).

### B. Plaintiff's Claim Regarding The TPM Tool Fails As A Matter Of Law.

Plaintiff's claim regarding the TPM Tool fails as a matter of law because it contains no contractual commitments, but does contain an express disclaimer. The TPM overview, upon which Plaintiff relies, merely describes how the TPM Tool was intended to work. The TPM overview, including the portion that Plaintiff cites in her Opposition, contains no assurance of continued employment. Opposition at 16.[5]   The language in the TPM overview is strikingly distinguishable from the manual language in Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 533, 733 A.2d 197, 205 (1999), which provided that employees would be terminated only for repeated violations or incidents involving serious conduct. See Opposition at 12.

---

[5] As set forth in Section I., supra, Plaintiff's reliance upon information regarding her performance fails to create a genuine issue of material fact.

7

Georgia-Pacific's Termination Policy provided that "any salaried employee . . . can be terminated, with or without cause, at any time . . . at the option of the Company." Richman Decl. Ex. A., attached as Exhibit C to Defendant's 56(a)1 Statement. Plaintiff has provided no support whatsoever for her bold assertion that this disclaimer is inadequate merely because it was published on Georgia-Pacific's intranet. 56(a)2 Statement ¶ 35. Plaintiff has admitted that Georgia-Pacific does not have an employment manual, but instead distributes its many policies and programs like TPM to employees through the intranet. 56(a)2 Statement ¶ 31. Accordingly, Georgia-Pacific published its disclaimer in its Termination Policy. Richman Decl. ¶ 7. The Termination Policy could be accessed from the same section of the intranet as the TPM overview. Id. ¶ 8. Georgia-Pacific's disclaimer provides clear "at-will" language and bars Plaintiff's implied contract claim based on the TPM Tool. See Finley, 202 Conn. at 199, 520 A.2d at 214 ("[B]y including appropriate disclaimers of the intention to contract, employers can protect themselves against employee contract claims.").

## IV. Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim Fails As A Matter of Law.

Plaintiff's Opposition does little more than restate her unsupported allegation that Georgia-Pacific acted with bad faith in terminating her employment. Opposition at 18. Plaintiff has failed to produce any evidence that establishes that Georgia-Pacific acted with sufficient malice or ill will to constitute bad faith. See Elm St. Builders, Inc. v. Enterprise Park Condo. Ass'n, Inc., 63 Conn. App. 657, 667–68, 778 A.2d 237, 244 (2001) (stating that "bad faith" is "affirmatively operating with furtive design or ill will"). Plaintiff has admitted that her allegation of bad faith is based upon the fact that she was terminated for poor performance. Owen Dep. at 199–200. She has produced absolutely no evidence of any furtive design, ill will, or sinister motive on the part of Georgia-Pacific. Plaintiff's mere allegations regarding Defendant's motive, without more, are not sufficient to withstand summary judgment. See Egri, 270 F. Supp. 2d at 290 ("Unsupported assertions and

conclusions of the nonmoving party are not enough to overcome a well-pleaded summary judgment motion.") (citations omitted).

V.    **Plaintiff's Negligence Claim Fails As A Matter of Law.**

In her Complaint, Plaintiff clearly pleads only a negligent hiring claim in relation to the hiring of Mr. Wayne Grant, her supervisor. To successfully plead negligent hiring plaintiff must show, among other elements, that the defendant was negligent in its selection of an employee and that the employee was incompetent or unfit. See Roberts v. Circuit-Wise, Inc., 142 F. Supp. 2d 211, 214 (D. Conn. 2001). Plaintiff has destroyed her negligent hiring claim by admitting no knowledge of Mr. Grant's hiring and by admitting that she "[doesn't] think necessarily that [Mr. Grant]'s unfit and incompetent in anything." Owen. Dep. at 209; see Owen Dep. at 211 (admitting no knowledge of Mr. Grant's hiring). Recognizing the failure of her negligent hiring claim, Plaintiff is now attempting to transform her claim into an undefined negligence claim based on Wayne Grant's use of the Company's evaluation policy and procedure. However, Connecticut courts have never recognized such a claim, and this claim should be dismissed.

Plaintiff's reliance on Emerick v. Kuhn, No. CV940460869S, 1996 WL 278355 (Conn. Super. May 7, 1996), an unpublished, superior court case, is misplaced. In this case, the court declined to decide whether the defendant-company could be liable for an executive's breach of its Code of Ethics. Id. The court, in so declining, pointed out that the negligence claim was only one claim in a 45-count complaint. Recognizing that so many of the counts were overlapping and that numerous claims were to be submitted to the jury, the court simply permitted the negligence claim to be submitted to the jury as well. Id. Neither the court in Emerick nor any other Connecticut court has held that a negligence claim such as that raised by Plaintiff is cognizable under Connecticut law.

Plaintiff also cites Chamberlain v. Bissell, Inc., 547 F. Supp. 1067 (W.D. Mich. 1982), which held that under Michigan law, a company can be negligent for a supervisor's performance evaluation

9

of another employee. However, this case is quite distinguishable from the case at bar. In Chamberlain, it was undisputed that the company had a policy of discharging employees only for cause. Id. at 1074. Georgia-Pacific has no such policy. The court also cautioned that its decision was limited by the facts in that case and dependent upon plaintiff being a 23-year veteran of the company. Id. at 1082. Ms. Owen had only worked for Georgia-Pacific a little more than two years before she was terminated. Owen Dep. at 20–21, 276. Connecticut courts have never recognized this claim. Thus, Plaintiff's newly asserted negligence theory fails to state a claim.

## VI. Federal Law Expressly Authorizes The Use Of Unsworn Declarations

In her Opposition, Plaintiff argues that Defendant's Declarations should not be considered since they are not affidavits. Opposition at 19. Federal law expressly authorizes the use of declarations as submitted by Defendant. 28 U.S.C. § 1746. Defendant's declarations complied with the requirements of 28 U.S.C. § 1746(2), and have the same evidentiary force and effect as an affidavit. Plaintiff makes this assertion in the face of Defendant having provided her with the statutory support for the use of these declarations. Much like many of the other arguments and contentions in Plaintiff's Opposition, this assertion is contrary to established law and is meritless.

Respectfully submitted this 8th day of March, 2004.

GEORGIA-PACIFIC CORPORATION

By: _____
Gregory B. Nokes
MCCARTER & ENGLISH
CityPlace 1, 185 Asylum Street
Hartford, Connecticut 06103-3495

Randall D. Avram (CT24717)
Richard D. Haygood (CT24718)
KILPATRICK STOCKTON LLP
3737 Glenwood Avenue, Suite 400
Raleigh, North Carolina 27612
Telephone: (919) 420-1700
Attorneys for Defendant,
Georgia-Pacific Corporation

## CERTIFICATE OF SERVICE

This is to certify that I have this date served **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** by depositing a true and correct copy of same in the United States mail with adequate first-class postage affixed thereon, addressed as follows:

>Stephen P. Horner, Esq.
>Law Office of Stephen P. Horner
>2183 Boston Post Rd.
>Darien, CT 06820

This 8th day of March, 2004.

_____

HARTFORD: 610483.01

Exhibit
A

Case 3:03-cv-00378-DJS   Document 39   Filed 03/08/2004   Page 12 of 14

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA OWEN, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | 3:03 CV 378 (DJS) |
| v. ) | |
| ) | |
| GEORGIA-PACIFIC CORPORATION, ) | |
| ) | |
| Defendant. ) | March 4, 2004 |

**SECOND DECLARATION OF LORI RICHMAN**

I, Lori Richman, declare and state the following:

1. I give this Declaration knowingly and voluntarily.

2. I am over the age of 18 and of sound mind. I have personal knowledge of the facts set forth below.

3. Ms. Owen received a $21,300 bonus for performance in plan year 2001. However, this bonus was not calculated solely on Ms. Owen's performance rating for that year. Rather, her eligibility for this bonus depended in large part on the success of the North American Consumer Products and Dixie businesses as a whole. Only a small portion of this bonus was tied to individual performance.

4. All other product managers in Ms. Owen's group received total bonus payouts for plan year 2001 of at least $22,600 -- the target bonus under this program. Ms. Owen was the only product manager in her group who received less than the target amount of the 2001 bonus.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 4th day of March, 2004. (28 U.S.C. § 1746)

*Lori Richman* (signature)

Lori Richman